# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. CATHY L. WALDOR |
| | : | |
| v. | : | Mag. No. 20-9248 (CLW) |
| | : | |
| EDWIN CORDERO | : | **CRIMINAL COMPLAINT** |

I, Joseph Patricola, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1349.

I further state that I am a Special Agent with the Department of Labor, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_by phone 6/29/20_
Joseph Patricola, Special Agent
Department of Labor

Agent Patricola attested to this Complaint by telephone pursuant to FRCP 4.1(b)(2)(A)

Sworn to before me and subscribed in my presence,

June 29, 2020                                  at District of New Jersey

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

## ATTACHMENT A

From in or about February 2019 through in or about April 2019, in the District of New Jersey and elsewhere, defendant

**EDWIN CORDERO**

knowingly and intentionally conspired with others to devise and intend to devise a scheme and artifice to defraud companies and individuals, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including communications to a server located in New Jersey, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349 and Section 2.

## ATTACHMENT B

I, Joseph Patricola, am a Special Agent with the Department of Labor, Office of Inspector General ("DOL"). I am familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and in part unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. Since in or about January 2017, DOL and the Federal Bureau of Investigation have been investigating a group of individuals that are suspected of engaging in, among other crimes, wire fraud, mail fraud, conspiracy to commit wire and mail fraud, and aggravated identity theft. The investigation has revealed that members of the conspiracy are obtaining checks from business entities by falsely claiming they are account holders with the business entity. This activity includes conspirators communicating with victim companies, including through a victim company's computer server in New Jersey, to cause the victim companies to issue checks based upon the conspirators' fraudulent representations. In addition, the investigation has revealed that members of the conspiracy are obtaining and seeking to obtain money by creating fraudulent checks that appear to be legitimate checks tied to legitimate financial accounts. Once the checks were deposited into a bank account opened by a member of the conspiracy in furtherance of the conspiracy, the individual who opened the account and/or others attempted to withdraw money from the account.

2. At all times relevant to this Complaint, defendant EDWIN CORDERO ("defendant CORDERO") was a resident of New York.

**The $138,000 Fraudulent Transfer**

3. On or about February 12, 2019, defendant CORDERO opened a bank account ("Bank Account 1") with a bank ("Bank 1"). Defendant CORDERO opened Bank Account 1 in the name Edwin E. Cordero. Defendant CORDERO was the sole signatory on Bank Account 1. When defendant CORDERO opened Bank Account 1, he deposited $50.00 into Bank Account 1.

4. On or about February 13, 2019, defendant CORDERO opened a bank account ("Bank Account 2") at Bank 1. Defendant CORDERO opened Bank Account 2 in the name of ECI Construction LLC. Defendant CORDERO

was the sole signatory on Bank Account 2. When defendant CORDERO opened Bank Account 2, he deposited $150 into Bank Account 2.

5. On or about April 25, 2019, an individual ("Victim 1") sent an email to his/her financial institution ("FI") directing it, in substance and in part, to send approximately $138,000 by wire transfer from Victim 1's bank account to a car dealership's bank account. Victim 1 provided the instruction to complete the wire transaction in an attachment. The FI responded, in substance and in part, that it could not open the attachment.

6. An unidentified individual posing as Victim 1 used Victim 1's email account to reply to the FI. The email provided wire instructions that directed, in substance and in part, the FI to wire the money to Bank Account 2. Victim 1 has stated, in substance and in part, that he/she did not send the email or authorize the FI to wire funds to Bank Account 2. Victim 1 further stated, in substance and in part, that he does not know CORDERO or ECI Construction LLC.

7. As a result of receiving the fraudulent email, the FI sent approximately $138,000 by wire transfer to Bank Account 2 on or about April 25, 2019. To date, the FI has not been able to recover any of this money.

8. On or about April 25, 2019, and after Bank Account 2 received the above wire transfer: (a) $50,000 was transferred from Bank Account 2 to Bank Account 1; (b) $1,000 was withdrawn from Bank Account 1 at an ATM.

9. On or about April 26, 2019, Bank Account 2 transferred approximately $35,000 to Bank Account 1.

10. On or about April 26, 2019, defendant CORDERO withdrew approximately $27,500 from Bank Account 1 through teller transactions.

11. On or about April 26, 2019, a co-conspirator withdrew approximately $4,000 from Bank Account 2 at an ATM.

12. Bank records reflect that on or about April 26, 2019, a debit card associated with Bank Account 2 was used to make four separate purchases totaling approximately $55,000 at a jewelry store in New York ("the Jewelry Store"). Between the third and fourth transactions, Bank Account 1 transferred $10,000 by wire to Bank Account 2.

13. On or about April 27, 2019, defendant CORDERO withdrew approximately $26,500 from Bank Account 1 through teller transactions. On

the same date, defendant CORDERO made two ATM withdrawals from Bank Account 2 in the total amount of approximately $3,400.

14. Bank records reflect that Bank Account 2 has had a balance of less than $50.00 since on or about April 29, 2019 and that Bank Account 1 has had a balance of approximately $0.00 since on or about May 2, 2019.

**The $51,000 Fraudulent Check**

15. On or about February 20, 2019, defendant CORDERO opened a bank account ("Bank Account 3") at a bank ("Bank 2"). Defendant CORDERO opened Bank Account 3 in the name of ECI Construction LLC. Defendant CORDERO was the sole signatory on Bank Account 3. When defendant CORDERO opened Bank Account 3, he deposited $250 into Bank Account 3.

16. On April 4, 2019, defendant CORDERO deposited a check bearing the number 1651 in the amount of approximately $51,000 (the "$51,000 Check") into Bank Account 3 at an ATM.

17. The 1651 Check was from a business account. The owner of the business ("Victim 2") has stated, in substance and in part, that he/she never wrote or authorized the $51,000 check. Victim 2 further stated that the actual check he/she wrote corresponding to check number 1651 was for approximately $250 and that it was never received by the intended recipient.

18. On or about April 15, 2019, two cash withdrawals totaling approximately $10,000 were made from Bank Account 3. Following the withdrawals, Bank 2 and determined the $51,000 check was fraudulent, froze the remaining funds, and closed Bank Account 3.

19. Bank records obtained from Bank 2 do not include any evidence that defendant CORDERO ever questioned the freezing of the funds or closure of Bank Account 3.